IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FERNANDO GONZALEZ, et al., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | NO. 11-5327 |
| | : | |
| MOLDED ACOUSTICAL PRODUCTS | : | |
| OF EASTON, INC., et al., | : | |
| Defendants. | : | |

## M E M O R A N D U M

**STENGEL, J.**                                                                 **March 27, 2013**

Plaintiffs Fernando Gonzalez, Gerardo Loaiza, and Jessica Delgado (collectively, Plaintiffs) filed this employment discrimination action against Molded Acoustical Products of Easton, Inc. (MAP); Ron DePack, MAP plant manager; and John D'Amico, Jr., MAP president (collectively, Defendants). Plaintiffs allege violations of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*, and the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951 *et seq.* Defendants moved for summary judgment. For the following reasons, I will deny the motion in part and grant it in part.

**I.      BACKGROUND[1]**

MAP hired Gonzalez, Loaiza, and Delgado, all of whom are Hispanic, in 1988, 1982, and 2000, respectively. Doc. No. 44 ¶¶ 11, 20, 26. All three were laid off in December 2008, along with more than 100 other MAP employees, due to the global economic downturn. Id. ¶¶ 17, 24, 31, 48; Doc. No. 45-1 ¶ 47. DePack conducted the

---
[1] The facts in this section are undisputed unless otherwise noted.

layoffs and indicated to Plaintiffs that they would be probably called back to work in early 2009. Delgado Dep. at 73-74; Gonzales Dep. at 95; Loaiza Dep. at 33.

By letters dated April 23, 2009, John Hanni, MAP's vice president of finance, formally terminated Plaintiffs' employment "because no recovery to [MAP's] former workload is likely in the near future." Doc. No. 45-4, Exs. 1-3. Hanni's letter indicated that "[t]his [decision] is not a reflection on your value as an employee[, and] it does not mean that you will never be rehired by MAP." Id. Hanni concluded, "If and when [MAP is] in a position to offer your job back to you, [MAP] will contact you to see if you are available." Id.

By August and September 2009, MAP's financial condition had improved slightly, and it hired three new floor managers. Doc. No. 44 ¶¶ 51, 56; Kuypers Dep. at 57-58. None had worked for MAP previously, and all were Caucasian. Doc. No. 44 ¶ 56; Kuypers Dep. at 63-64. Plaintiffs were not contacted about returning to MAP at that time. MAP hired two more floor managers, both Caucasian and new to MAP, in April and May 2010. Plaintiffs were not contacted at that time either.

In August 2010, Hanni contacted Plaintiffs about returning to MAP. None agreed to return because all had found new jobs. Delgado Dep. at 97; Gonzalez Dep. at 18-19; Loaiza Dep. at 64.

II.  **STANDARD OF REVIEW**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "material" only if it might affect the

outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party.  Id.

A party moving for summary judgment always bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing relevant portions of the record, including depositions, documents, affidavits, or declarations, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c).  Summary judgment is therefore appropriate when the non-moving party fails to rebut the moving party's argument that there is no genuine issue of fact by pointing to evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322; Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992).

Under Rule 56, the Court must draw "all justifiable inferences" in favor of the non-moving party.  Anderson, 477 U.S. at 255.  The Court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."  Id. at 252.  The nonmoving party cannot avert summary judgment with speculation or conclusory allegations, such as those found in the pleadings, but rather, must present clear evidence

from which a jury can reasonably find in its favor. Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999).

## III. DISCUSSION

### A. Failure to Hire (Counts I, II, and IV)

Plaintiffs do not contend their layoffs in December 2008 or their terminations in April 2009 were discriminatory. To the extent Plaintiffs were ever pursuing a hostile work environment claim, they abandoned it in opposition to Defendants' motion. Doc. No. 45-2 at 6. Thus, the sole issue before me is whether Defendants' failure to rehire Plaintiffs as floor managers in August and September 2009 and in April and May 2010 was discriminatory under Title VII, § 1981, and the PHRA. Compl. ¶¶ 25-28.[2]

Absent direct evidence, disparate treatment claims under Title VII, § 1981, and the PHRA are analyzed pursuant to the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999).

#### 1. Prima Facie Case

McDonnell Douglas first requires the plaintiff to establish a prima facie case of discrimination. 411 U.S. at 802. In the failure-to-hire context, a plaintiff may establish a prima facie case of discrimination by showing that (1) he belongs to a protected class; (2) he applied and was qualified for the position; (3) he was subject to an adverse

---

[2] Plaintiffs filed their charges of discrimination with the EEOC in February 2010. Accordingly, to the extent Plaintiffs' Title VII and PHRA claims are based on failures to hire in April and May 2010, they are barred for failure to exhaust administrative remedies. Ryan v. Gen. Mach. Products, 277 F. Supp. 2d 585, 594 (E.D. Pa. 2003) (holding that failures to promote occurring after the filing of plaintiff's EEOC charge are administratively barred). "Section 1981," however, "does not require exhaustion of administrative remedies." Fortes v. Boyertown Area Sch. Dist., CIVA 06-0878, 2006 WL 3043108, at *5 n.12 (E.D. Pa. Oct. 20, 2006). Thus, failures to hire in April and May 2010 can serve as a basis for liability under § 1981.

employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position.  Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994); Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003). Defendants contest the prima facie case only as to plaintiffs Loaiza and Delgado.

### i. Delgado's Prima Facie Case

Defendants argue that Delgado's prima facie case fails because she was a pocket leader, not a floor manager, and no pocket leaders were hired in August and September 2009 or in April and May 2010.  Doc. No. 44-12 at 7.[3]  Initially, this argument misconstrues Delgado's claim.  Delgado is challenging her non-hiring for five *floor manager* positions.  Doc. No. 45-2 at 7.  That MAP did not hire Delgado for a non-existent *pocket leader* position is irrelevant to her claim.[4]

There is, however, a problem with Delgado's prima facie case, unaddressed by the parties.  Unlike Loaiza and Gonzales, who were unquestionably floor managers as of December 2008, Delgado's position at that time is not readily apparent from the record. Kuypers is the only person to actually identify Delgado as a floor manager.  Kuypers Dep. at 44-45.  Plaintiffs jump on Kuypers' testimony, contending that because Defendants presented her as witness pursuant to Federal Rule of Civil Procedure

---

[3] Although Defendants raise this argument in the prextext section of their brief, it is in substance an argument that Delgado has failed to make out a prima facie case. Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 352 (3d Cir. 1999) (noting that the prima facie case serves to "eliminate the most obvious, lawful reasons for the defendant's action," such as where "the position that an applicant sought was not filled for economic reasons").

[4] Defendants make no argument that Delgado was unqualified for the floor manager positions.

5

30(b)(6),[5] her testimony "may not be controverted." Doc. No. 45-1 at 12 n.3. That is not the case. "[T]estimony of a Rule 30(b)(6) representative, although admissible against the party that designates the representative, is not a judicial admission absolutely binding on that party." State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc., 250 F.R.D. 203, 212 (E.D. Pa. 2008) (citation omitted); see also A.I. Credit Corp. v. Legion Ins. Co., 265 F.3d 630, 637 (7th Cir. 2001) ("[T]estimony given at a Rule 30(b)(6) deposition is evidence which, like any other deposition testimony, can be contradicted and used for impeachment purposes") (citation omitted).

Here, there is an issue of material fact regarding Delgado's position at the time of her layoff. DePack testified that Delgado was a "pocket" or "team" leader; he did not identify her among MAP's floor managers. DePack Dep. at 45-46, 79, 103. D'Amico, another Rule 30(b)(6) witness, did not identify Delgado as a floor manager. D'Amico Dep. at 47. Delgado herself testified that she was a "supervisor" at the time of her layoff, having been promoted to that position from pocket leader in 2007. Delgado Dep. at 64. Notably, Delgado refuted Kuypers' testimony that she was a floor manager:

Q: Did you use this letter [of recommendation prepared by Kuypers]?

. . .

A: No

Q: You never did?

---

[5] Rule 30(b)(6) provides in relevant part that "[i]n its notice or subpoena, a party may name as the deponent a . . . corporation . . . and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more . . . persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify . . . . The persons designated must testify about information known or reasonably available to the organization."

> A: It was misprinted so, no.
>
> Q: Where was it misprinted?
>
> A: It says here I was a floor manager. Floor manager was Fernando Gonzalez.
>
> Q: During your tenure at MAP, you started as a packer and then were promoted to pocket leader and then to supervisor?
>
> A: Correct.
>
> Q: Is it fair to say that the next step up would have been floor manager?
>
> A: I guess, yes.
>
> Q: So, actually Ms. Kuypers misprinted promoting you in this letter, didn't she?
>
> A: Yes.

Delgado Dep. at 74-75. The numerous performance-related emails DePack sent in August and September 2008 support this testimony. DePack sent emails to all the individuals he identified as floor managers but not to Delgado. Doc. No. 44-4. Whatever Delgado's position was, there is ample evidence that she was not a floor manager on par with Gonzales and Loaiza, whom she identified as her superiors even after her 2007 promotion to "supervisor." Delgado Dep. at 52. Nonetheless, in light of Kuypers' testimony, this is an issue best left for the jury.

  Under the circumstances of this case, Delgado's position is material because she never formally applied to any of the five floor manager positions following her layoff. Indeed, her contention is that she was not "given the *opportunity* to apply." Compl. ¶ 27 (emphasis added); <u>see</u> <u>also</u> Doc. No. 7-3 at 8 ("Charging Party was not called back and

7

was not given the opportunity to apply for her old position."). Generally, "[a] failure to rehire is . . . not actionable if the plaintiff did not apply for the position and the defendant had no knowledge of the plaintiff's interest." Warshaw v. Concentra Health Services, 719 F. Supp. 2d 484, 500 (E.D. Pa. 2010). "Were the law otherwise, every employer would be bound to consider its previous employees for new positions regardless of whether such employees were even remotely interested in the new positions." E.E.O.C. v. MCI Int'l, Inc., 829 F. Supp. 1438, 1482 (D.N.J. 1993).

Nonetheless, the Third Circuit has identified several situations where the failure to formally apply for a job will not bar a plaintiff from establishing a prima facie case of discrimination. A plaintiff must show that she "made every reasonable effort to convey her interest in the job to her employer, was deterred from applying by the employer's discriminatory practices and would have applied for the position but for those practices, or had a genuine and real interest in the position but reasonably believed that a formal application would be futile." Lula v. Network Appliance, Inc., 245 F. App'x 149, 152 (3d Cir. 2007) (citations omitted); see also Newark Branch, N.A.A.C.P. v. Town of Harrison, N.J., 907 F.2d 1408, 1415 (3d Cir. 1990). Additionally, the lack of a formal application may be excused where the employer "had some reason or duty to consider [the plaintiff] for the post." Fowle v. C & C Cola, a Div. of ITT-Cont'l Baking Co., 868 F.2d 59, 68 (3d Cir. 1989).

Assuming Delgado was not a floor manager at the time her layoff, it does not appear her failure to formally apply can be excused. Nothing in the record indicates Delgado made any effort to convey her interest in a floor manager position to MAP's

decisionmakers after December 2008. Delgado testified that between her layoff and her learning that MAP hired new floor managers, she spoke with only one MAP employee, Denora Cruz, one of her former direct reports, and that the conversation was not work related. Delgado Dep. at 63, 67. There is also nothing in the record to indicate Delgado was deterred from applying because of any discriminatory practice.

It may be argued that Delgado believed an application would be futile because DePack in December 2008 and Hanni in April 2009 indicated she would be called back to "[her] job" if the economy improved. Delgado Dep. at 73; Doc. No. 45-4, Ex. 1. This argument lacks merit if Delgado was not a floor manager at the time of her layoff. Even accepting Delgado's claim that she was "cross-trained" as a floor manager, Doc. No. 45-1 ¶ 51, she cannot now argue that MAP should have considered her for *any* open supervisory position following her layoff. Warshaw, 719 F. Supp. 2d at 499 ("[P]laintiff is not . . . empowered to proceed to trial on the wide-ranging theory that discrimination resulted in his non-hiring for all of the positions being placed through [the employer's] systems.") (citation omitted). Rather, Delgado must have held a real and genuine interest in a floor manager position and a reasonable belief that applying for the position would be futile. While she may have wanted and expected to return to MAP, nothing in the record suggests she held such an interest or such a belief in a floor manager position. Indeed, assuming Delgado was not a floor manager at the time of her layoff and termination, when reassurances were made about future employment, it would be particularly unreasonable for her to have believed that formally applying was futile given that she did not subsequently express interest to MAP's decisionmakers. For the same

9

reasons, MAP would have had no reason to consider Delgado for a floor manager position or any position aside from her "old position." Doc. No. 7-3 at 8.[6] Because genuine issues of material fact exist as to whether Delgado sufficiently applied, or may be excused from applying, to any of the challenged floor manager positions, Defendants' motion is denied as to her failure-to-hire claim.[7]

### ii.     Loaiza's Prima Facie Case

Defendants argue that Loaiza's prima facie case fails because Louis Santiago, a Hispanic floor manager who was also laid off in December 2008 but who was recalled the following month, "replaced [Loaiza] as floor manager of the first shift." Doc. No. 44-12 at 5. This argument misconstrues both the law and Loaiza's claim.

First, assuming Santiago did "replace" Loaiza as first-shift floor manager, it does not necessarily follow that Loaiza's disparate treatment claim fails. Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 353-54 (3d Cir. 1999); Coleman v. Blockbuster, Inc., CIV.A. 05-4506, 2008 WL 2622912, at *8 n.9 (E.D. Pa. June 30, 2008) ("A discrimination claim is not automatically defeated by a showing that, although plaintiff was not promoted, another member of the protected class was."). Defendants' argument is unavailing at the outset because it hinges entirely on this mistaken premise.

---

[6] Although neither Gonzales nor Loaiza formally reapplied to a floor manager position, their situations are distinguishable from Delgado's. As indicated, there is no dispute that Gonzales and Loaiza were floor managers at the time of their layoff and termination; thus, in light of DePack and Hanni's assurances that each would be contacted about returning to "[their] jobs" if the economy improved, MAP had a reason to consider them for floor manager positions even without formal applications. Furthermore, it is clear from the record that DePack and D'Amico did consider and reject Gonzales and Loaiza during those times. E.g., Robinson v. Matthews Int'l Corp., CIV.A.06-1504, 2009 WL 735876, at *9-10 (W.D. Pa. Mar. 20, 2009) (excusing application requirement where defendant employer considered and rejected plaintiff employee for challenged position without employee's knowledge). In Delgado's case, there is scant evidence that she was ever considered for a floor manager position in August and September 2009 or in April and May 2010.

[7] My inquiry into Delgado's failure-to-hire claim ends here, since Defendants make no other argument that her claim should fail.

10

And second, Defendants appear to have lost sight of the adverse action here. Loaiza is challenging his failure to be rehired in August and September 2009 and in April and May 2010. Compl. ¶¶ 25-28. Santiago was laid off in late-December 2008, along with Loaiza and the rest of MAP's floor managers; he was recalled in early-January 2009. Santiago Dep. at 27-28; Kuypers Dep. at 44. That Santiago may have "replaced" Loaiza in January 2009, apparently by assuming Loaiza's first-shift duties, DePack Dep. at 54-55; Hanni Dep. at 39, is not persuasive evidence of Defendants' reasons for failing to rehire Loaiza in August and September 2009 and in April and May 2010.[8] For sure, this fact is insufficient to defeat Loazia's prima facie case where it is undisputed that Defendants hired five white floor managers during those times instead of rehiring Loaiza. Defendants' "replacement" argument simply does not fit the facts of Loaiza's case, which is one for failure to hire, not discriminatory discharge.

Because Loaiza and Gonzales have met their burden of establishing a prima facie case, I move to stage two of the McDonnell Douglas analysis.

### B.   Legitimate, Nondiscriminatory Reasons

At stage two, the burden of production shifts to the defendant employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas, 411 U.S. at 802. The defendant's burden at this stage is "relatively light" given that it "need not prove that the tendered reason *actually* motivated its behavior" but only that it may have. Fuentes, 32 F.3d at 763; Clair v. Agusta Aerospace Corp., 592 F. Supp. 2d 812, 818 (E.D. Pa. 2009).

---

[8] This fact "might have some evidentiary force" if Loaiza were challenging his layoff, but he is not. Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 354 (3d Cir. 1999).

11

As to plaintiffs Loaiza and Gonzalez, Defendants advance several legitimate, nondiscriminatory reasons.  First, Defendants claim that Loaiza and Gonzalez were not rehired due to performance issues, namely their failure to follow procedures and timely respond to directives and communications.  Doc. No. 44-12 at 5-7; DePack Dep. at 73-74, 83-86; D'Amico Dep. at 48-49.  These concerns appear to be at least partially reflected in a series of emails from DePack in August and September 2008.  Doc. No. 44-4 at 8-9, 13.  Second, Defendants claim that the white floor managers hired in August and September 2009 did not "replace" Loaiza and Gonzalez.  Doc. No. 44-12 at 5-7.  Finally, Defendants contend that the floor managers hired in August and September 2009 and April and May 2010 worked with DePack at a different company and were hired for less money.  Id.

Defendants have met their burden at stage two, and I move to the final step of the McDonnell Douglas analysis.

### C.     Pretext

At stage three, the burden of production shifts back the plaintiff to show that the employer's proffered reasons were a pretext for discrimination.  McDonnell Douglas, 411 U.S. at 802.  A plaintiff who makes this showing satisfies his ultimate burden of persuasion.  Fuentes, 32 F.3d at 763.

To establish pretext, a plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's

12

action." Id. at 764. A plaintiff proceeding under the former route, as Loaiza and Gonzalez do here, "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable factfinder could rationally find them unworthy of credence." Id. at 765.

As to their alleged performance issues, Loaiza and Gonzalez have produced evidence from which a jury could reasonably disbelieve Defendants. Kuypers testified that Loaiza and Gonzalez were never disciplined for poor performance and that it was "everybody's plan . . . to bring back the people who were laid off." Kuypers Dep. at 34, 72. DePack indicated to Loaiza and Gonzalez in December 2008 that each would called back to work in early 2009. Gonzales Dep. at 95; Loaiza Dep. at 33. D'Amico testified that he would have brought everyone back in early 2009 if the economy had improved. D'Amico Dep. at 66. D'Amico also allegedly told Gonzales that he would "be the first one called back followed by [Loaiza]." Gonzales Dep. at 95. Hanni indicated that MAP's decision to terminate Loaiza and Gonzalez was "not a reflection on [their] value as [] employee[s]," and he specifically reserved the possibility that each would be rehired. Doc. No. 45-4, Exs. 1-2. Finally, in a position statement to the EEOC, Defendants' maintained that Loaiza[9] "was not laid off because of any shortcoming in his performance[, and] he has always been an excellent and valuable employee." Doc. No. 45-4, Ex. 5.[10] Viewed in the light most favorable to Loaiza and Gonzales, this evidence

---

[9] It does not appear Defendants submitted an EEOC position statement regarding Gonzalez.

[10] Defendants have submitted a motion *in limine* to preclude admission of their EEOC position statements. They cite E.E.O.C. v. Gear Petroleum, Inc., 948 F.2d 1542 (10th Cir. 1991), for the proposition that their statements are inadmissible under 42 U.S.C. § 2000e-5(b) as "informal methods of conference, conciliation, and persuasion." This argument is unavailing. Defendants' positions statements plainly were not made in the course of an informal

13

tends to undermine Defendants' claims of poor performance. DePack and D'Amico's representations in December 2008 that Loaiza and Gonzales would be rehired—and thus were presumably performing well enough to be rehired—are particularly relevant, given that the evidence of poor performance is confined largely to their testimony and that they were the decisionmakers. DePack's emails, which make up the only documentary evidence of poor performance prior to the December 2008 layoffs, are undercut for the same reasons. To the extent these emails are critical of Loaiza and Gonzales,[11] DePack's representations in December 2008 suggest he was satisfied with their job performance, at least to a degree that he would consider rehiring them.

Defendants' remaining nondiscriminatory reasons are simply not borne out the record. Defendants contend that none of the floor managers hired in August and September 2009 and April and May 2010 "replaced" Loaiza and Gonzales, yet DePack testified that the new floor managers were hired to fill the positions Loaiza and Gonzales once held. DePack Dep. at 102. Defendants contend the new floor managers performed different jobs than Gonzales and Loaiza, yet DePack testified that their duties "were the same." Id. at 76. Defendants contend that the new floor managers knew DePack from another company, yet DePack denied knowing any of them. Id. at 69-70. Finally,

---

conciliation process but rather served to respond to, and deny, Plaintiffs' charges. See Murtha v. Forest Elec. Corp., CIV. A. 90-3259, 1992 WL 174606, at *8 (E.D. Pa. July 14, 1992) (distinguishing Gear Petroleum and admitting EEOC positions statements in which the defendant "made no attempt at compromise, but flatly denied Plaintiff's charges and offered its own version of why Plaintiff was no longer employed"). Defendants contend further that admitting their position statements would "reward [Plaintiffs'] obstructionism." Doc. No. 48 at 4. I already rejected this argument. Doc. No. 20 ("The Defendants have not offered sufficient evidence in support of their allegation that the Plaintiffs refused to participate in the investigation of the Charges."). Defendants' motion *in limine* is therefore denied.

[11] DePack's emails appear to consist mainly of work assignments as opposed to criticisms of Loaiza and Gonzales' job performance.

Defendants contend the new floor managers were hired for less money. Although they cite no record in evidence in support of this assertion, Doc. No. 44 ¶ 56, Loaiza and Gonzales appear to concede it, Doc. No. 45-1 ¶ 56. An employee's high salary may serve as a legitimate, nondiscriminatory reason for an adverse employment action. Bernhard v. Nexstar Broad. Group, Inc., 146 F. App'x 582, 585 (3d Cir. 2005). Defendants are not entitled to summary judgment on this basis, however, because the record is devoid of evidence that DePack and D'Amico considered salaries, or anything other than job performance, in deciding not to rehire Loaiza and Gonzalez. DePack Dep. at 73-74, 83-86; D'Amico Dep. at 48-49.[12]

Plaintiffs' failure-to-hire claims therefore survive Defendants' motion.[13]

### B.   Individual Liability Under § 1981 and the PHRA

In a cursory few paragraphs, Defendants contend that DePack and D'Amico are entitled to summary judgment because MAP is. Doc. No. 44-12 at 13-14. MAP is not entitled to summary judgment, and in any event, DePack and D'Amico are not either based on the record before me.

"[A] claim seeking to impose personal liability under Section 1981 must be predicated on the actor's personal involvement and there must therefore be some affirmative link to causally connect the actor with the discriminatory action." Johnson v.

---

[12] To the extent Defendants direct the arguments in this paragraph to Delgado as well, they are unavailing for the same reasons.

[13] I briefly address two issues Defendants raise regarding Plaintiffs' § 1981 claims. First, Defendants appear to suggest that Plaintiffs do not have actionable claims under § 1981 because they are Hispanic. Doc. No. 44-12 at 7-8. Courts in this Circuit have rejected this argument, and I will do the same. E.g., Valentin v. Philadelphia Gas Works, CIV.A.03-3833, 2004 WL 690805, at *5 n.3 (E.D. Pa. Mar. 29, 2004) ("[A]n Hispanic person can bring a cause of action for race discrimination pursuant to Section 1981."). And second, Defendants contend that Plaintiffs failed to oppose summary judgment on their § 1981 claims. Doc. No. 46-1 at 4. Defendants must not have read Plaintiffs' brief, which specifically addressed their § 1981 claims. Doc. No. 45-2 at 12.

Res. for Human Dev., Inc., 843 F. Supp. 974, 978 (E.D. Pa. 1994).  Similarly, "an individual supervisory employee can be held liable under an aiding and abetting/accomplice liability theory pursuant to § 955(e) [of the PHRA] for his own direct acts of discrimination or for his failure to take action to prevent further discrimination by an employee under supervision."  Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren P.C., 20 F. Supp. 2d 885, 887 (E.D. Pa. 1998).

The record testimony indicates that the decision to not rehire Plaintiffs rested solely with DePack and D'Amico, both of whom were unquestionably supervisory employees.  DePack Dep. at 71-73; Hanni Dep. at 36; Kuypers Dep. at 50.  This evidence suffices to raise a material factual issue regarding DePack and D'Amico's individual liability under § 1981 and § 955(e), and I will deny Defendants' motion accordingly.

### C. Punitive Damages

Punitive damages are available under Title VII where an employer "has engaged in intentional discrimination and has done so 'with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'"  Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 530 (1999) (quoting 42 U.S.C. § 1981a(b)(1)).[14]  To justify an award of punitive damages, proof of intentional discrimination is not enough; rather, the employer must have "discriminate[d] in the face of a perceived risk that its actions will violate federal law."  Id. at 536.  Even if this showing is made on the part of an individual employee, "[t]he plaintiff must impute liability for punitive damages to" the employer by showing that the employee was serving in a managerial capacity when he committed the

---

[14] The Kolstad standard applies equally to Plaintiffs' claims for punitive damages under § 1981.  Bellamy v. Waterfront Square Condominiums, CIV.A. 12-6618, 2013 WL 607848, at *6 (E.D. Pa. Feb. 19, 2013).

wrong and was acting in the scope of employment. Id. at 539; see also Medcalf v. Trustees of Univ. of Pennsylvania, 71 F. App'x 924, 932 (3d Cir. 2003).

Defendants contend there is no evidence that DePack or D'Amico acted with malice or reckless indifference in failing to rehire Plaintiffs in August and September 2009.[15] Plaintiffs counter by pointing to several allegedly "deceitful" actions taken by MAP, its employees, and defense counsel in conducting this litigation. Plaintiffs also focus on the purportedly "sham" job offers made to Plaintiffs in August 2010. Doc. No. 45-2 at 16-17. All of these actions were taken long after DePack and D'Amico made the decision to not rehire Plaintiffs and therefore do not suggest either acted with malice or reckless indifference in making that decision. Beyond raising an issue of material fact on their failure-hire-claims, Plaintiffs identify no record evidence that would justify a finding that DePack and D'Amico acted "in the face of a perceived risk that [their] actions will violate federal law." Kolstad, 527 U.S. at 536.

Defendants' motion as to Plaintiffs' claim for punitive damages is therefore granted.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion is granted as to Plaintiffs' claim for punitive damages; Defendants' motion is otherwise denied.

An appropriate order follows.

---

[15] Defendants make no attempt to avail themselves of Kolstad's good-faith compliance exception. 527 U.S. at 545 ("[A]n employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good-faith efforts to comply with Title VII.") (citation omitted).